IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |
|---|---|
| BOLA PRATT,<br>      Plaintiff, | *<br>*<br>*<br>* |
|  | *<br>* |
| v. | *     Civil Action No. 12-cv-00368-AW |
|  | * |
| BAC HOME LOAN SERVICING, LP,<br>      Defendant. | *<br>*<br>* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum Opinion**

The matters currently before the Court are a Motion to Dismiss by Defendant Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP, Doc. No. 7, and Plaintiff's Motion for Leave to Amend Complaint, Doc. No. 9. The Court has reviewed the motion papers submitted by the parties and finds that no hearing is necessary. *See* Loc. R. 105(6) (D. Md. 2010). For the reasons articulated below, the Court will grant Defendant's Motion to Dismiss and deny as futile Plaintiff's Motion to Amend Complaint.

**I.       Factual & Procedural Background**

Due to the fact that Plaintiff has effectively abandoned his initial Complaint, the following facts are drawn from the proposed Amended Complaint except where otherwise noted. This action arises from Plaintiff's participation in the Home Affordable Modification Program ("HAMP") and Defendant's denial of a permanent loan modification. Plaintiff has defaulted on his loan and is now facing imminent foreclosure on his residence at 8704 Dorian Lane, Clinton, Maryland. Proposed Am. Compl. ¶¶ 3, 54.

Plaintiff purchased his residence with a loan from Countrywide Home Loans Servicing, LP ("Countrywide"), Defendant's predecessor in interest.  Although it is unclear when Plaintiff purchased the residence, he began struggling to make repayments sometime in 2008.  On December 17, 2008, Plaintiff and Countrywide entered into a permanent loan modification agreement pursuant to which Plaintiff's monthly payments were reduced from $2,739.30 to $2,391.50.  *Id.* ¶¶ 6, 7.  Plaintiff began making monthly payments at the reduced rate and remained current on his loan.  *Id.* ¶ 7.

In early August, 2009, Plaintiff received paperwork from Defendant for a HAMP Home Affordable Modification Trial Period Plan ("TPP").  Doc. No. 9 Ex. 4.  The TPP stated that between the dates of August 11, 2009 and October 1, 2009, Plaintiff would make a reduced trial period payment of $2,001.10 on his loan.  *Id.*  The TPP provided that it is a two-step process.  Under step one, Plaintiff would be required to make mortgage payments at the reduced rate during a three-month trial period and to submit certain documents confirming the reasons Plaintiff could not afford his regular mortgage payment.  If Defendant sent Plaintiff fully executed copies of a permanent modification agreement and the TPP prior to the end of the trial period, Plaintiff would then be able to proceed to step two and would be granted a permanent loan modification.

The TPP required Plaintiff to certify as follows:

> If Prior to the Modification Effective Date, [in this case, October 1, 2009,] (i) the Servicer does not provide me a fully executed copy of this [TPP] and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this [TPP]; or (iii) the Servicer determines that my representations [relating to ability to afford mortgage payments] are no longer true and correct, the Loan Documents will not be modified and this [TPP] will terminate.  In this event the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to the amounts I owe under the Loan Documents and shall not be refunded to me; and

> I understand that the [TPP] is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.  I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this [TPP].

*Id.*

Although Plaintiff acknowledges that he was current on his loan payments as of August 2009 and did not need another loan modification, he nevertheless completed the TPP paperwork and certified that

> I am unable to afford my mortgage payments … and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future[.]

*Id.*; Proposed Am. Compl. ¶ 10.  On August 11, 2009, Plaintiff began the trial period and paid the reduced mortgage rate of $2,001.10.  Proposed Am. Compl. ¶ 11.

Plaintiff continued making reduced payments throughout the trial period, which ended October 1, 2009.  *Id.*  Plaintiff does not contend that he received a fully executed copy of the TPP and Modification Agreement prior to October 1, 2009, and therefore, under its terms, the TPP terminated on October 1.  However, Plaintiff received a letter from Defendant on November 13, 2009 extending his trial period through December 31, 2009.[1]  Doc. No. 7 Ex. B.  The letter stated that, while Plaintiff's trial period had expired and Plaintiff had failed to provide complete documentation (as necessary under step one of the TPP), Plaintiff would be given another chance

---

[1] The Court may consider Defendant's letter without converting Defendant's Motion to Dismiss into a motion for summary judgment because the letter is central to Plaintiff's claims.  *See Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 655 n.4 (4th Cir. 2004).

to submit such documentation in order for Defendant to determine Plaintiff's eligibility for a permanent loan modification.

Accordingly, Plaintiff continued making his mortgage payments at the reduced rate of $2,001.10.  Proposed Am. Compl. ¶ 11.  Plaintiff does not contend, however, that he received a fully executed copy of the TPP and Modification Agreement prior to the new Modification Effective Date of December 31, 2009, and thus, by its terms, the TPP terminated on December 31.  The Court understands from Plaintiff's proposed Amended Complaint, however, that Plaintiff continued making his mortgage payments at the reduced trial rate after the December 31, 2009 expiration of the TPP.

On March 31, 2010, Plaintiff received a letter from Defendant stating that "[y]ou qualify for a permanent modification of your home loan under [HAMP]."  Doc. No. 2 Ex. 4.  The letter stated that Plaintiff had met the terms of the TPP by providing his financial information and making the trial payments.  *Id.*  The letter stated that the permanent loan modification would be finalized when Plaintiff received a Modification Agreement, which he would need to sign and return.  *Id.*  The letter also "strongly encourage[d]" Plaintiff "to continue making monthly mortgage payments in the amount of your trial period payments."  *Id.*

As he had since August 2009, Plaintiff continued making his mortgage payments at the reduced rate of 2,001.10.  Plaintiff was never sent a Modification Agreement by Defendant, however, and thus he never received a permanent loan modification.  *See* Proposed Am. Compl. ¶ 14.  Plaintiff had been making reduced payments for well over a year when, on April 25, 2011, Plaintiff received a letter from Defendant indicating that he was facing foreclosure on his home. *Id.*  On May 25, 2011, Plaintiff received a notice of intent to foreclose on Plaintiff's property.  *Id.* ¶ 17.  Plaintiff stopped making payments on his loan due to the threat of foreclosure, and his

4

loan subsequently went into default. *Id.* On July 8, 2011, Defendant informed Plaintiff that his mortgage payment was now due at an accelerated rate of $3,025.86. *See id.* ¶ 18.

On or about December 13, 2011, Plaintiff brought this action against Defendant in the Circuit Court for Prince George's County, Maryland, alleging eight causes of action based on Defendant's breach of the TPP. Defendant removed this action to this Court on February 6, 2012 and filed a Motion to Dismiss shortly thereafter. In response, Plaintiff moved to amend his Complaint, abandoning six of his original claims and adding two more. Plaintiff's proposed Amended Complaint alleges liability against Defendant for (1) breach of the TPP contract; (2) promissory estoppel; (3) violation of the Maryland Consumer Protection Act, Md. Code Ann., § 13-301, *et seq.*; and (4) breach of Plaintiff's original loan modification agreement of December 17, 2008.


## II.      Standard of Review

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend a pleading should be denied only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation and internal quotation marks omitted). The standard for futility is the same as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (amendment is futile where the amended complaint would still fail to survive a motion to dismiss).


## III.     Analysis

As a preliminary matter, Plaintiff has essentially abandoned his original Complaint by the filing of his amended Complaint and failure to respond to Defendant's Motion to Dismiss.  As such, Defendant's Motion to Dismiss Plaintiff's original Complaint will be granted, and the Court will proceed to consider Plaintiff's Motion for Leave to Amend Complaint. While the Court finds no bad faith on Plaintiff's behalf in seeking to amend his Complaint, nor prejudice to Defendant at this early stage of the litigation, it must deny Plaintiff's motion on the ground of futility.  For the reasons discussed below, Plaintiff fails to state a claim as to any of his four remaining Counts.

A.     Count I: Breach of Contract (TPP)

 Plaintiff contends that the TPP Agreement he received in August, 2009 constituted a valid contract whereby Plaintiff would commence making reduced loan payments, and in return Defendant would consider Plaintiff for a permanent loan modification in compliance with HAMP.  Plaintiff argues that Defendant breached the contract by failing to properly and timely process Plaintiff's permanent loan modification request and failing to grant Plaintiff a permanent loan modification in accordance with HAMP and the TPP Agreement.  Plaintiff argues in the alternative that had Defendant processed his loan application in a timely manner and informed Plaintiff that he had been denied a permanent loan modification, Plaintiff would have resumed making his original loan payments.

Although Plaintiff brings his claim under breach of contract, it is essentially a claim of entitlement to a permanent loan modification under HAMP.  Breach of contract claims premised on HAMP have been flatly rejected by many courts, as borrowers do not have an express or implied right of action under HAMP.  *See, e.g.*, *Stovall v. Suntrust Mortg., Inc.*, Civ. No. RDB–10–2836, 2011 WL 4402680, at *11 (D. Md. Sept. 20, 2011) (plaintiff's breach of contract claim

failed to state a cause of action independent of HAMP); *see also Bourdelais v. J.P. Morgan Chase Bank, N.A.*, No. 10–0670–HEH, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011) (same); *Vida v. OneWest Bank, F.S.B.*, No. 10–987–AC, 2010 WL 5148473, at *4 (D. Or. Dec. 13, 2010) (same).

Additionally, the language of the TPP Agreement belies Plaintiff's contention that Defendant owed Plaintiff any contractual duty to comply with HAMP or to otherwise provide Plaintiff with timely notice that his TPP had expired and that he did not qualify for a permanent loan modification. The plain language of the TPP provides in relevant part that:

> [i]f prior to the Modification Effective Date, … the Servicer does not provide me a fully executed copy of this Plan and the Modification Agreement; … or … the Servicer determines that my representations [related to inability to afford mortgage payments] are no longer true and correct, *the Loan Documents will not be modified and this [TPP] will terminate*.

Doc. No. 9 Ex. 3 (emphasis added). According to Plaintiff's own allegations, he had been able to afford his mortgage payments at the time he received the TPP, and thus, under the plain language of the TPP, he did not qualify for a permanent loan modification. Additionally, Plaintiff should have been aware when he failed to receive a fully executed copy of the TPP and Modification agreement on either October 1, 2009 or December 31, 2009 (the "Modification Effective" dates), that the TPP had expired and he would not be receiving a permanent loan modification. Nothing in the TPP provides Plaintiff with a right to a permanent loan modification or additional notice that the modification was denied. Accordingly, the Court denies leave to amend as to Count I.

     B.     <u>Count II: Promissory Estoppel</u>

Assuming the TPP is not a contract, Plaintiff brings a claim in the alternative for promissory estoppel. In order to state a claim for promissory estoppel under Maryland law, a

plaintiff must show: (1) a clear and definite promise by the defendant; (2) a reasonable

expectation by the defendant that the promise will induce action or forbearance by the plaintiff;

(3) the promise does induce actual and reasonable action or forbearance by the plaintiff; and (4) a

resulting detriment to the plaintiff that can only be avoided by enforcement of the promise.

*Holland v. Psychological Assessment Res., Inc.*, No. CCB–04–437, 2004 WL 1368873, at *3 (D.

Md. June 16, 2004) (citing *Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521, 531–32

(Md. 1996)).

Plaintiff alleges that "Defendant made a clear and definite promise to Plaintiff that if he

made his temporary loan modification payments, met the criteria for a HAMP modification, then

he would receive a permanent loan modification."  Proposed Am. Compl. ¶ 30.  However, as

discussed above, the plain language of the TPP makes clear that it is not a promise to

permanently modify Plaintiff's mortgage. The TPP states that it "is not a modification of the

Loan Documents and that the Loan Documents will not be modified unless and until" *inter alia*,

Plaintiff "receive[s] a fully executed copy of the Modification Agreement …[.]"  Doc. No. 9 Ex

3.  It additionally provides that "[i]f prior to the Modification Effective Date … the Servicer does

not provide me a fully executed copy of this Plan and the Modification Agreement … the Loan

Documents will not be modified and this [TPP] will terminate."  *Id.*

Even supposing the TPP could be construed as a clear promise to modify Plaintiff's loan

if certain conditions occurred, one such condition would be receipt of a fully executed copy of

the Modification Agreement and TPP prior to the October 1, 2009 or December 31, 2009

"Modification Effective" dates.  As Plaintiff does not allege to have ever received a fully

executed copy of the Modification Agreement by either date, it would have been unreasonable

for Plaintiff to continue making reduced payments in reliance on the TPP.  The Court notes that

8

Plaintiff's promissory estoppel claim may have been viable had Plaintiff made reduced payments in reliance on Defendant's apparently erroneous letter of March 31, 2010 telling Plaintiff that he qualified for a permanent loan modification and "strongly encourag[ing]" Plaintiff to "continue making monthly mortgage payments in the amount of [his] trial period payments" while awaiting the forthcoming Modification Agreement.  It appears, however, that Plaintiff instead relied on the TPP to continue making reduced payments after the expiration of the trial period and even before he received the erroneous March 31, 2010 letter.  Such reliance on the TPP, as discussed above, was misplaced and unreasonable given the plain language of the TPP.  Accordingly, Plaintiff has not sufficiently pled a claim for promissory estoppel and his motion to amend as to Count II must be denied.

      C.      <u>Count III: Violation of the Maryland Consumer Protection Act</u>

In Count III, Plaintiff alleges that Defendant violated the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., § 13–301, *et seq*., first by offering Plaintiff the TPP when Plaintiff did not need or request it, and then by failing to properly process the TPP and grant Plaintiff a permanent loan modification.  The MCPA prohibits "unfair or deceptive trade practices", Md. Code Ann. Com. Law § 13–301, and provides a private right of action where an individual can "establish the nature of the actual injury or loss that he or she has allegedly sustained as a result of the prohibited practice," *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 280 (Md. 2007).  Plaintiff's MCPA claim sounds in fraud and is thus subject to the heightened pleadings standards of Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 n.10 (D. Md. 2009).  Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake."  These circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making

the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1297 (2d ed. 1990)).

As an initial matter, Plaintiff has not alleged with sufficient particularity facts showing that Defendant's offer of the TPP was "unfair, deceptive, oppressive, unconscionable" or "contrary to public policy and generally recognized standards applicable to the consumer lending business." *See* Proposed Am. Compl. ¶¶ 38–46. Plaintiff was under no obligation to enter into the TPP process, especially since, as he acknowledges, he was current on his loan and did not need another loan modification. Plaintiff does not contend that he was somehow fraudulently induced into undergoing the TPP process, or that he was not fully apprised of the TPP's terms. Plaintiff has provided no evidence in support of his overarching conspiracy theory that Defendant needlessly solicits TPPs and then denies permanent loan modifications for financial gain. Plaintiff merely alleges that he was offered the TPP at a time when he did not need or request it and was subsequently denied a permanent loan modification. Accordingly, Plaintiff has failed to properly plead fraud as to Defendant's solicitation of the TPP.

Additionally, Plaintiff has not sufficiently alleged that Defendant engaged in unfair or deceptive acts in the processing of the TPP. Plaintiff alleges only that, as a result of Defendant's entering him into the TPP process and then denying him a permanent loan modification, Plaintiff forwent other remedies that he might have otherwise pursued to save his home, such as restructuring his debt under the bankruptcy code or selling his home. Plaintiff's contention is again based on the assumption that his compliance with Step One of the TPP entitled him to a permanent loan modification, which, as discussed above, is belied by the plain language of the TPP document. Again, it does not appear from the facts alleged that Plaintiff made reduced

payments in reliance on Defendant's erroneous March 31, 2010 communication.  Rather,

Plaintiff's MCPA claim, like his breach of contract and promissory estoppel claims, appear to be

based on a misinterpretation of the TPP document and subsequent claim of entitlement to a

permanent loan modification.

Moreover, Plaintiff has failed to establish an "actual injury or loss" due to any unfair or

deceptive practice by Defendant.   Plaintiff's accelerated loan obligation of $3,025.86 appears to

be due to his decision to stop making loan payments and to allow his loan to go into default.  The

TPP makes clear that once it has terminated "the Servicer will have all the rights and remedies

provided by the Loan Documents … [.]"  It appears that Plaintiff's original loan agreement

provided for accelerated payments in the event of default.  Thus, Plaintiff has not established that

his accelerated payments are incorrect or otherwise the result of unfair or deceptive acts.

D.     Count IV: Breach of Contract (Permanent Modification Entered into on 12/17/2008)

Finally, Plaintiff alleges a breach of contract claim based on his original loan

modification agreement of December, 2008, which lowered his monthly payments from

$2,739.30 to $2,391.50.  Plaintiff alleges that this contract was breached on July 8, 2011, when

Defendant began billing Plaintiff at an accelerated monthly rate of $3,025.86.  Plaintiff does not

allege more specifically how the original modification agreement was breached, and it appears

from the language of the contract that Plaintiff's mortgage was subject to acceleration in the

event of default.  *See* Doc. No. 7 Ex. A at 12 (acceleration clause in Plaintiff's August 8, 2006

Deed of Trust).  Although Plaintiff's mortgage loan was modified in December, 2008,

subsequent to the execution of the Deed of Trust, the 2008 modification does not appear to

change the acceleration clause in the Deed of Trust.  *See* Doc. No. 9 Ex. 5 at 2 ("Except as

otherwise specifically provided in this Agreement, the Note and Security Instrument will remain

11

unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement."). Accordingly, Plaintiff has failed to allege breach of contract as to the December, 2008 loan modification agreement.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss will be granted and Plaintiff's Motion for Leave to Amend Complaint will be denied. A separate order will follow.

  April 30, 2012                                   /s/                          
       Date                                         Alexander Williams, Jr.
                                                    United States District Judge